

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| BABATUNDE F. OGUNDIYUN<br>RODNEY S. PETERS | : |
| | : |
|        Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| BANK OF AMERICA, N.A. | : |
| | : |
|   SERVE:   CT Corporation System | : |
|            4701 Cox Road, Suite 285 | : |
|            Glen Allen, VA 23060 | : |
| | : |
| SPECIALIZED LOAN SERVICING, LLC | :   CIVIL ACTION NO. |
| | : |
|   SERVE:   Capital Corporate Services, Inc. | :   3:14 CV 161 |
|            10 S. Jefferson St., Ste. 1400 | : |
|            Roanoke, VA 24011 | : |
| | : |
| EQUIFAX INFORMATION SERVICES, LLC | : |
| | : |
|   SERVE:   Corporation Service Company | : |
|            1111 East Main Street | : |
|            Richmond, VA 23219 | : |
| | : |
| EXPERIAN INFORMATION SOLUTIONS, INC. | : |
| | : |
|   SERVE:   David N. Anthony | : |
|            Troutman Sanders LLP | : |
|            1001 Haxall Point | : |
|            Richmond, VA 23219 | : |
| | : |
| TRANS UNION, LLC | : |
| | : |
|   SERVE:   Corporation Service Company | : |
|            1111 East Main Street | : |
|            Richmond, VA 23219 | : |
| | : |
|          Defendants. | : |

## COMPLAINT

COME NOW the Plaintiffs, Babatunde F. Ogundiyun ("Ogundiyun") and Rodney S. Peters ("Peters"), collectively the Plaintiffs, by counsel, and as for their Complaint against the Defendants, they alleges as follows:

### PRELIMINARY STATEMENT

1.      This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to 15 U.S.C. § 1681, *et seq.* (the Fair Credit Reporting Act or "FCRA") and 12 U.S.C. § 2601, *et seq.* (the Real Estate and Settlement Procedures Act or "RESPA").

### JURISDICTION

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681(p), and 12 U.S.C. § 2605(f).

### PARTIES

3.      Plaintiffs are natural persons residing in Virginia, and at all times relevant to this Complaint were each a "consumer" as defined by the FCRA.

4.      Defendant Bank of America, N.A. ("BOA") is a national association doing business in Virginia. At all times relevant to this Complaint, it was a "furnisher" of credit information as defined by the FCRA.

5.      Defendant Specialized Loan Services, LLC ("SLS") is a foreign limited liability company doing business in Virginia. At all times relevant to this Complaint, it was a "furnisher" of credit information as defined by the FCRA.

6.      Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company doing business in Virginia. At all times relevant to this Complaint, it was a "credit reporting agency" as defined by the FCRA.

2

7.      Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation doing business in Virginia.  At all times relevant to this Complaint, it was a "credit reporting agency" as defined by the FCRA.

8.      Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company doing business in Virginia.  At all times relevant to this Complaint, it was a "credit reporting agency" as defined by the FCRA.

## STATEMENT OF FACTS

9.      In 2009, Defendant BOA received more than $45 billion in bail-out money from the federal government.  As a result, Defendant BOA was required to participate in the Home Affordable Modification Program ("HAMP"), a program designed to provide affordable mortgage modifications to eligible homeowners as part of an effort to prevent consumer foreclosures.

10.     However, despite this requirement that Defendant BOA participate in HAMP, it was discovered that Defendant BOA actively ignored its obligations under this program in evaluating consumers' for a HAMP loan modification.

11.     In fact, there is multi-district litigation pending in the District of Massachusetts regarding Defendant BOA's failure to comply with its duties to participate in HAMP on a nationwide scale. *See In Re: Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, MDL No. 2193 (D. Mass. 2010).

12.     During this litigation's extensive discovery process, it was discovered that Defendant BOA failed to dedicate the required number of necessary staff nor did it provide the

necessary training to its employees to evaluate homeowners for HAMP eligibility.[1]

13.    Similarly, on a regular basis, Defendant BOA referred consumers to foreclosure who had successfully completed a HAMP trial period plan and should have been given a permanent loan modification.[2]

14.    Most egregiously, Defendant BOA deliberately instructed its employees to delay consumer HAMP applications.[3]

15.    As the Plaintiffs in the multi-district litigation in the District of Massachusetts discovered:

> BoA explicitly instructed its employees to delay applications and to lie to customers as part of a deliberate practice of stringing homeowners along. It ordered employees to hold financial documents for at least thirty days before reviewing them. It directed employees to falsely tell homeowners that BoA had not received the documents they sent. When homeowners inquired as to the status of their modifications, employees were instructed to tell them their files were "under review" when, in fact, their files had not been accessed for months or when the file had been rejected. BoA used these strategies to shepherd homeowners into in-house modifications that were more expensive for homeowners, but more profitable for BoA. BoA closely monitored employees who spoke to customers. Supervisors would regularly plug into ongoing phone calls without warning. Employees caught admitting BoA had received financial documents, or admitting the borrower was entitled to a modification, were subject to discipline including immediate termination.[4]

16.    In fact, approximately twice a month, Defendant BOA engaged in a "blitz" to reduce its HAMP backlog, during which time hundreds of HAMP modification files were declined at once for no reason beyond that the financial documents were more than 60 days

---

[1] *See* Pls.' Mem. in Supp. of Mtn. for Class Certification at 4–5, *In Re: Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, MDL No. 2193 (D. Mass. June 7, 2013), ECF No. 209.

[2] *See id.* at 5.

[3] *Id.* at 6.

[4] *Id.* (internal citations omitted).

old—as a result of Defendant BOA's own delay in processing these documents.[5]

### *Facts Relating to Plaintiff Ogundiyun*

17.     Plaintiff Ogundiyun obtained a mortgage loan with Defendant BOA with an account number ending in −4597 ("the BOA account").

18.     Around mid to late 2009, Plaintiff Ogundiyun applied for a HAMP loan modification with his servicer, Defendant BOA.

19.     Around March of 2010, Plaintiff Ogundiyun's loan modification was approved and he was placed in a temporary trial plan during which time he was to make three consecutive modified payments.

20.     Defendant BOA informed Plaintiff Ogundiyun that if he made those payments pursuant to the trial plan, he would be approved for a final HAMP modification.

21.     Thereafter, Plaintiff successfully made his trial plan payments according to the trial plan and BOA's instructions.

22.     Despite his successful completion of the trial plan, Defendant BOA failed to send the final loan modification agreement documents that Plaintiff Ogundiyun was required to complete to obtain his loan modification.

23.     Plaintiff Ogundiyun followed up with Defendant BOA on numerous occasions, requesting that Defendant BOA send this paperwork to him.

24.     Instead, after numerous phone calls, Defendant BOA claimed to have lost Plaintiff Ogundiyun's paperwork and informed him that he would need to submit a new HAMP loan modification application.

25.     Plaintiff Ogundiyun immediately did so, and then spent approximately the next

---

[5] *Id.* at 7.

year submitting and resubmitting paperwork that BOA requested.

26.     During this time, Plaintiff Ogundiyun continued making his modified payments according to Defendant BOA's instructions that he do so while under review for a modification.

27.     Plaintiff Ogundiyun was again approved for a loan modification and again placed in a temporary trial plan.

28.     During this time, Plaintiff Ogundiyun successfully completed his trial plan according to BOA's instructions.

29.     However, despite his compliance with the trial plan, Defendant BOA refused to send Plaintiff Ogundiyun his final loan modification agreement for a second time.

30.     Once again, Defendant BOA claimed to have lost Plaintiff Ogundiyun's loan modification application and paperwork and informed Plaintiff Ogundiyun that he would need to restart the loan modification application process for a third time.

31.     As directed, Plaintiff Ogundiyun immediately submitted his third HAMP loan modification application to Defendant BOA.

32.     Around January of 2013, Plaintiff was approved for a loan modification for a third time and successfully completed his trial plan payments.

33.     After approximately three years of participating in the loan modification process, Defendant BOA finally sent Plaintiff Ogundiyun a loan modification agreement.

34.     Plaintiff Ogundiyun signed this agreement on or around February 1, 2013 and returned the agreement to Defendant BOA.

35.     Thereafter, Defendant BOA signed the modification agreement on or around February 13, 2013 and filed the modification agreement with the Prince William County, Virginia land records on September 24, 2013.

36.    However, despite entering into a loan modification agreement with Defendant BOA and making all of his loan payments according to the modification, Defendant BOA failed to update Plaintiff's account to show that it was modified and continued considering Plaintiff Ogundiyun's account as delinquent.

37.    In fact, on or around September 13, 2013, Defendant BOA sent Plaintiff a letter stating that his application for loss mitigation options was denied, despite that he already had a loan modification in place.

38.    Then in November 2013, Defendant BOA sent Plaintiff Ogundiyun a notice of intent to accelerate his loan and refer his loan to foreclosure, notwithstanding that his loan was not delinquent.

39.    Defendant BOA has altogether failed to comply with the terms of this loan modification agreement.

40.    Around late 2013, Plaintiff Ogundiyun discovered that his BOA account was reporting as delinquent since November of 2009 on his credit reports.

41.    Around mid-December of 2013, Plaintiff Ogundiyun submitted a written dispute to Defendants Experian, Trans Union, and Equifax in which he disputed the BOA account and notified Defendants Experian, Trans Union, and Equifax that he was involved in a loan modification with his loan servicer and made all of his payments according to its instructions.

42.    Additionally, Plaintiff Ogundiyun also informed Defendants Experian, Trans Union, and Equifax that he entered into a loan modification agreement with Defendant BOA in February of 2013 and sent a copy of the loan modification agreement that was recorded with the Prince William County, Virginia land records.

43.    Upon information and belief, in response to Plaintiff Ogundiyun's disputes,

Defendants Experian, Trans Union, and Equifax, through their outsource vendors in the Philippines, Chile, Costa Rica and/or India, merely transmitted a two-digit "dispute code" in an electronic ACDV to BOA in accordance with their standard investigation procedures.

44.     Defendants Experian, Trans Union, and Equifax failed to forward all relevant information regarding the BOA account when they processed Plaintiff Ogundiyun's disputes.

45.     In response to Plaintiff Ogundiyun's disputes, Defendant BOA verified that the BOA account was reporting correctly.

46.     Each Defendant failed to update the BOA account to show that Plaintiff Ogundiyun made his mortgage payments in compliance with his loan servicer's instructions and according to his loan modification agreement and continued to inaccurately report the BOA account.

47.     Defendants, in all regards, failed to perform a meaningful and searching inquiry into the substance of Plaintiff Ogundiyun's disputes, causing him significant damages.

48.     Defendants Experian, Trans Union, and Equifax are well aware that the FCRA requires them to conduct a meaningful investigation of a consumer's dispute.

49.     Upon information and belief, Defendants Experian, Trans Union, and Equifax have each developed a method of processing consumer disputes that is specifically designed to process consumer disputes cheaply and quickly, rather than accurately.

50.     Upon information and belief, these methods often do not comply with the FCRA's requirement that Defendants Experian, Trans Union, and Equifax must conduct a meaningful investigation of a consumer's dispute. For example, and without limitation, Defendants Equifax, Trans Union, and Experian often conduct only a cursory review of the documentation that a consumer attaches to his dispute and do not forward the documentation to

the furnisher.

51.     Upon information and belief, Defendants Experian, Trans Union, and Equifax know that their methods of processing disputes do not comply with the requirements of the FCRA. Despite this knowledge, Defendants Experian, Trans Union, and Equifax continue to ignore the FCRA's requirements concerning consumer disputes because noncompliance is a more cost-effective way for them to conduct business.

52.     Experian's, Trans Union's, and Equifax's conduct was willful and entitles Plaintiff Ogundiyun to recover punitive damages for their violations of the FCRA.

53.     Experian's, Trans Union's, and Equifax's failure to adequately investigate Plaintiff Ogundiyun's disputes regarding his status on the accounts caused him to suffer actual damages.

54.     Additionally, in January of 2014, Plaintiff Ogundiyun submitted a Qualified Written Request to Defendant BOA under section 6 of the Real Estate Settlement and Procedures Act, disputing the payments that Defendant BOA considered delinquent and Defendant BOA's continued failure to update Plaintiff Ogundiyun's account to reflect his loan modification.

55.     Plaintiff Ogundiyun further requested that Defendant BOA update his credit report to accurately reflect his loan modification.

56.     Defendant BOA failed to (1) make appropriate corrections to Plaintiff's account and notify him in writing of the corrections; (2) investigate Plaintiff's account and provide him with a written clarification as to why they believed Plaintiff's account to be correct; and/or (3) investigate Plaintiff's account and either provide the requested information or provide an explanation as to why the requested information was unavailable.

57.     Additionally, Defendant BOA provided delinquent information to Defendants

9

Equifax, Trans Union, and Experian regarding Plaintiff's alleged overdue payments made pursuant to his loan servicer's instructions within the 60-day period beginning on the date of BOA's receipt of Plaintiff's Qualified Written Request.

58.     As a loan servicer, Defendant BOA is well aware of its requirements under RESPA regarding a consumer's qualified written request.

59.     Upon information and belief, Defendant BOA has developed a pattern and practice of responding to consumers' qualified written requests by providing only a few choice documents, such as an accounting history, rather than substantively responding to their individual inquiries because it is more cost efficient business practice.

60.     As a result of the Defendants' conduct, Plaintiff Ogundiyun has suffered actual damages and intends to rely on third party witnesses such as Capital One, N.A. to prove these damages.

### *Facts Relating to Plaintiff Peters*

61.     In January 2007, Plaintiff Peters obtained a mortgage loan that was serviced by Defendant BOA and had an account number ending in -2716 ("the BOA account").

62.     In mid-2012, Plaintiff Peters sought a loan modification from Defendant BOA.

63.     However, Defendant BOA advised Plaintiff Peters that it would not consider him for a loan modification because he was current on his monthly payments.

64.     Defendant BOA instructed the Plaintiff Peters to not make any payments for two months and then to submit a loan modification application.

65.     Plaintiff Peters complied with Defendant BOA's instructions and submitted a loan modification application in approximately June 2012.

66.     However, Defendant BOA reported Plaintiff Peters's loan as delinquent on his

10

credit reports, despite its instructions not to make payments prior to submitting his loan modification application.

67.     While Plaintiff Peters's loan modification application was pending, BOA referred his loan to foreclosure.

68.     In order to prevent his home from being sold at a foreclosure auction, Plaintiff Peters submitted several payments to Defendant BOA, some of which were rejected by BOA and returned to him.

69.     On November 1, 2012, while it was still evaluating his loan modification application, Defendant BOA transferred the servicing rights to Plaintiff Peters's loan to Defendant SLS.

70.     SLS assigned a new account number ending in -3049 ("the SLS account").

71.     Immediately upon transfer of Plaintiff Peters's loan, Defendant SLS claimed that Plaintiff Peters's Account was delinquent and that he owed BOA payments for the months during which he was instructed not to make payments.

72.     Defendant SLS informed Plaintiff Peters that it had not received the loan modification application that he submitted to SLS and that he should submit a new loan modification application.

73.     Plaintiff Peters complied with SLS's instructions and submitted a new loan modification application. He also paid a substantial amount of money to bring his loan "current", despite the fact that he had always paid his mortgage exactly as his servicer instructed.

74.     Thereafter, Plaintiff Peters submitted a Qualified Written Request under section 6 of RESPA to Defendants BOA and SLS, disputing the payments that Defendants BOA and SLS considered delinquent.

75.     Plaintiff Peters further requested that Defendants BOA and SLS correct his account to delete any late fees or other foreclosure expenses and costs and provide him with certain loan history documents

76.     Defendants BOA and SLS failed to (1) make appropriate corrections to Plaintiff's account and notify him in writing of the corrections; (2) investigate Plaintiff's account and provide him with a written clarification as to why they believed Plaintiff's account to be correct; and/or (3) investigate Plaintiff's account and either provide the requested information or provide an explanation as to why the requested information was unavailable.

77.     Additionally, Plaintiff Peters submitted written disputes to Defendants Experian, Trans Union, and Equifax, and notified them that the BOA Account was reporting as delinquent while he was paying pursuant to his loan servicers' instructions and that his credit reports were inaccurate.

78.     Upon information and belief, in response to Plaintiff Peters's disputes, Defendants Experian, Trans Union, and Equifax, through their outsource vendors in the Philippines, Chile, Costa Rica and/or India, merely transmitted a two-digit "dispute code" in an electronic ACDV to BOA in accordance with their standard investigation procedures.

79.     Defendants Experian, Trans Union, and Equifax failed to forward all relevant information regarding the BOA account when they processed Plaintiff Peters's disputes.

80.     In response to Plaintiff Peters's disputes, Defendant BOA verified that the BOA account was reporting correctly.

81.     Each of these Defendants failed to update the BOA account to show that Plaintiff Peters made his mortgage payments in compliance with his loan servicer's instructions and continued to inaccurately report the BOA Account.

12

82. Defendants, in all regards, failed to perform a meaningful and searching inquiry into the substance of Plaintiff Peters's disputes, causing him significant damages.

83. Defendants Experian, Trans Union, and Equifax are well aware that the FCRA requires them to conduct a meaningful investigation of a consumer's dispute.

84. Upon information and belief, Defendants Experian, Trans Union, and Equifax have each developed a method of processing consumer disputes that is specifically designed to process consumer disputes cheaply and quickly, rather than accurately.

85. Upon information and belief, these methods often do not comply with the FCRA's requirement that Defendants Experian, Trans Union, and Equifax must conduct a meaningful investigation of a consumer's dispute. For example, and without limitation, Defendants Equifax, Trans Union, and Experian often conduct only a cursory review of the documentation that a consumer attaches to his dispute and do not forward the documentation to the furnisher.

86. Upon information and belief, Defendants Experian, Trans Union, and Equifax know that their methods of processing disputes do not comply with the requirements of the FCRA. Despite this knowledge, Defendants Experian, Trans Union, and Equifax continue to ignore the FCRA's requirements concerning consumer disputes because noncompliance is a more cost-effective way for them to conduct business.

87. Experian's, Trans Union's, and Equifax's conduct was willful and entitles Plaintiff Peters to recover punitive damages for their violations of the FCRA.

88. Experian's, Trans Union's, and Equifax's failure to adequately investigate Plaintiff Peters's disputes regarding his status on the accounts caused him to suffer actual damages.

89.    Additionally, Defendant BOA provided delinquent information to Defendants Equifax, Trans Union, and Experian regarding Plaintiff Peters's alleged overdue payments made pursuant to his loan servicer's instructions within the 60-day period beginning on the date of BOA's receipt of Plaintiff Peters's Qualified Written Request.

90.    As loan servicers, Defendants BOA and SLS are well aware of their requirements under RESPA regarding a consumer's qualified written request.

91.    Upon information and belief, Defendants BOA and SLS have developed a pattern and practice of responding to consumers' qualified written requests by providing only a few choice documents, such as an accounting history, rather than substantively responding to their individual inquiries because it is more cost efficient business practice.

92.    As a result of the Defendants' conduct, Plaintiff Peters has suffered actual damages and intends to rely on third party witnesses such as SunTrust Mortgage, Inc. to prove these damages.

**COUNT ONE:**
**FIRST CLAIM FOR RELIEF AGAINST**
**DEFENDANTS EQUIFAX, TRANSUNION, AND EXPERIAN**
**(Violation of 15 U.S.C. § 1681e(b))**
*(All Plaintiffs)*

93.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

94.    Defendants Equifax, Trans Union, and Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning the Plaintiffs.

95.    As a result of this alleged conduct, action, and inaction, the Plaintiffs suffered

actual damages.

96.     Defendants' conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

97.     Plaintiffs are therefore entitled to recover actual damages, statutory damages, costs, and their attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

### COUNT TWO:
### SECOND CLAIM FOR RELIEF AGAINST
### DEFENDANTS EQUIFAX, TRANSUNION, AND EXPERIAN
### (Violation of 15 U.S.C. § 1681i(a)(1))
### *(All Plaintiffs)*

98.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

99.     Defendants Equifax, Trans Union, and Experian violated 15 U.S.C § 1681i(a)(1) by their conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently update the information in the file.

100.     As a result of this alleged conduct, action, and inaction, the Plaintiffs suffered actual damages.

101.     Defendants' conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

102.    Plaintiffs are therefore entitled to recover actual damages, statutory damages, costs, and their attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT THREE:
## THIRD CLAIM FOR RELIEF AGAINST
## DEFENDANTS EQUIFAX, TRANSUNION, AND EXPERIAN
## (Violation of 15 U.S.C. § 1681i(a)(2))
### *(All Plaintiffs)*

103.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

104.    Defendants Equifax, Trans Union, and Experian violated 15 U.S.C § 1681i(a)(2) by their conduct which includes, but is not limited to, failing to send to the furnisher all relevant information that they received in the Plaintiffs' dispute letters.

105.    As a result of this alleged conduct, action, and inaction, the Plaintiffs suffered actual damages.

106.    Defendants' conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendants were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

107.    Plaintiffs are therefore entitled to recover actual damages, statutory damages, costs, and their attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT FOUR:
## FOURTH CLAIM FOR RELIEF AGAINST
## DEFENDANTS EQUIFAX, TRANSUNION, AND EXPERIAN
### (Violation of 15 U.S.C. § 1681i(a)(4))
*(All Plaintiffs)*

108.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

109.   Defendants Equifax, Trans Union, and Experian violated 15 U.S.C § 1681i(a)(4) by their conduct which includes, but is not limited to, failing to review and consider all relevant information that they received in the Plaintiffs' communications.

110.   As a result of this alleged conduct, action, and inaction, the Plaintiffs suffered actual damages.

111.   Defendants' conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

112.   Plaintiffs are therefore entitled to recover actual damages, statutory damages, costs, and their attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT FIVE:
## FIFTH CLAIM FOR RELIEF AGAINST
## DEFENDANTS EQUIFAX, TRANSUNION, AND EXPERIAN
### (Violation of 15 U.S.C. § 1681i(a)(5))
*(All Plaintiffs)*

113.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

114.   Defendants Equifax, Trans Union, and Experian violated 15 U.S.C § 1681i(a)(5)

by their conduct which includes, but is not limited to, failing to update or delete any information that was the subject of the Plaintiffs' disputes and that was inaccurate or could not be verified.

115. As a result of this alleged conduct, action, and inaction, the Plaintiffs suffered actual damages.

116. Defendants' conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

117. Plaintiffs are therefore entitled to recover actual damages, statutory damages, costs, and their attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT SIX:
## FIRST CLAIM FOR RELIEF AGAINST BOA
### (Violation of 15 U.S.C. § 1681s-2(b))
### *(All Plaintiffs)*

118. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

119. Defendant BOA violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b) by publishing the inaccurate tradeline within Plaintiffs' credit files, failing to fully and properly investigate the Plaintiffs' disputes, failing to review all relevant information regarding the same; and failing to correctly report the accurate results of a reasonable investigation.

120. As a result of BOA's conduct, actions, and inaction, the Plaintiffs suffered actual damages.

121. BOA's conduct, actions and inaction were willful, rendering it liable for punitive

18

damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, BOA was negligent, entitling Plaintiffs to recover under 15 U.S.C. §1681o.

122.    Plaintiffs are therefore entitled to recover actual damages, statutory damages, costs, and their attorneys' fees from BOA in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

**COUNT SEVEN:**
**SECOND CLAIM FOR RELIEF AGAINST BOA**
**(Violation of 12 U.S.C. § 2605(e)(2))**
***(All Plaintiffs)***

123.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

124.    Defendant BOA violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(2), by failing to (1) make appropriate corrections to Plaintiffs' account and notify him in writing of the corrections; (2) investigate Plaintiffs' accounts and provide them with a written clarification as to why BOA believed Plaintiffs' accounts to be correct; and/or (3) investigate Plaintiffs' accounts and either provide the requested information or provide an explanation as to why the requested information was unavailable.

125.    As a result of Defendant BOA's conduct, actions, and inaction, Plaintiffs suffered actual damages.

126.    Plaintiffs are therefore entitled to recover actual damages and their attorneys' fees and costs from BOA in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

127.    Additionally, upon information and belief, Defendant BOA's conduct with respect to the Plaintiffs is a pattern and practice of misconduct with many consumers. Thus, for

each violation of 12 U.S.C. § 2605(e), Defendant BOA is also liable to Plaintiffs for additional damages up to $2,000 per violation.

### COUNT EIGHT:
### THIRD CLAIM FOR RELIEF AGAINST BOA
### (Violation of 12 U.S.C. § 2605(e)(3))
### (*All Plaintiffs*)

128.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

129.    Defendant BOA violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(3), by providing delinquent information to Defendants Equifax, Trans Union, and Experian regarding Plaintiffs' alleged overdue payments within the 60-day period beginning on the date of BOA's receipt of Plaintiffs' Qualified Written Requests.

130.    As a result of Defendant BOA's conduct, actions, and inaction, Plaintiffs suffered actual damages.

131.    Plaintiffs are therefore entitled to recover actual damages and their attorneys' fees and costs from BOA in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

132.    Additionally, upon information and belief, Defendant BOA's conduct with respect to the Plaintiffs is a pattern and practice of misconduct with many consumers. Thus, for each violation of 12 U.S.C. § 2605(e), Defendant is also liable to Plaintiffs for additional damages up to $2,000 per violation.

### COUNT NINE:
### FIRST CLAIM FOR RELIEF AGAINST SLS
### (Violation of 12 U.S.C. § 2605(e)(2))
### (*Plaintiff Peters Only*)

133.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth

at length herein.

134.    Defendant SLS violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(2), by failing to (1) make appropriate corrections to Plaintiff Peters's account and notify him in writing of the corrections; (2) investigate Plaintiff Peters's account and provide him with a written clarification as to why SLS believed Plaintiff Peters's account to be correct; and/or (3) investigate Plaintiff Peters's account and either provide the requested information or provide an explanation as to why the requested information was unavailable.

135.    As a result of Defendant SLS's conduct, actions, and inaction, Plaintiff Peters suffered actual damages.

136.    Plaintiff Peters is entitled to recover actual damages and his attorneys' fees and costs from SLS in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

137.    Additionally, upon information and belief, Defendant SLS's conduct with respect to Plaintiff Perers is a pattern and practice of misconduct with many consumers. Thus, for each violation of 12 U.S.C. § 2605(e), Defendant SLS is also liable to Plaintiff Peters for additional damages up to $2,000 per violation.

WHEREFORE, the Plaintiffs demand judgment for compensatory, statutory, and punitive damages against the Defendants; for their attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**BABATUNDE F. OGUNDIYUN
RODNEY S. PETERS**

21

By: _____
            Of Counsel

Matthew J. Erausquin, VSB No. 65434
Janelle Mason Mikac, VSB No. 82389
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com
janelle@clalegal.com
casey@clalegal.com